IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BIMBO BAKERIES USA, INC. AND VALERII KHADIKOV,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**MARCO RUBIO, in his official capacity as United States Secretary of State,**<br><br>*Defendant.* | **CIVIL ACTION NO. 24-5919** |

**MEMORANDUM RE: MOTION TO DISMISS**

**Baylson, J.**                                                                                                        **March 19, 2025**

      Plaintiffs Bimbo Bakeries USA, Inc. ("Bimbo") and Valerii Khadikov (together, "Plaintiffs") allege that Mr. Khadikov has been waiting since September 6, 2023 for the United States Embassy in Yerevan, Armenia, to render a decision on his nonimmigrant visa application. Plaintiffs assert two counts against Secretary Rubio in his official capacity ("Defendant" or "the Government"),[1] alleging that Defendant has violated the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), by (1) failing to comply with regulations requiring Defendant to process Mr. Khadikov's additional evidence supporting his visa application within 120 days, and (2) unreasonably delaying adjudication of Mr. Khadikov's visa application. The Complaint seeks, in part, an order compelling Defendant to complete processing of Mr. Khadikov's nonimmigrant visa application, for himself and his family, within thirty days.

      Presently before this Court is Defendant's Motion to Dismiss both counts of the Complaint for lack of subject matter jurisdiction and for failure to state a claim. Though Mr. Khadikov has

---

[1] The Complaint was originally brought against former Secretary of State Antony Blinken. Secretary Rubio is automatically substituted as the named party by operation of Federal Rule of Civil Procedure 25(d).

unfortunately been waiting a long time for the Embassy to process additional evidence he submitted with his nonimmigrant visa application, for the reasons stated below, the Complaint must be dismissed because the Court lacks subject matter jurisdiction. Accordingly, Defendant's Motion to Dismiss is **GRANTED**.

I.   **FACTUAL BACKGROUND**

The events giving rise to this case, as alleged by Plaintiffs in the Complaint, are as follows.[2]

The Complaint alleges that Bimbo Bakeries USA, Inc. ("Bimbo") is a subsidiary of an international baking company, Grupo Bimbo S.A.B. de C.V. ("Grupo Bimbo"), and has been seeking to transfer Mr. Khadikov from Grupo Bimbo's Russian subsidiary to Bimbo's plant in Missouri since September 2023. Compl. (ECF 1) at ¶¶ 30–31, 44. Bimbo allegedly sponsored Mr. Khadikov for a "Blanket L" nonimmigrant visa via a process under the Immigration and Nationality Act ("INA") allowing for intracompany transfers of managers or employees with specialized knowledge. Id. ¶¶ 12–29. As alleged, Mr. Khadikov possesses expertise that is critical to Bimbo's operations, and Bimbo planned to have Mr. Khadikov manage a team in Bimbo's bakery production facility in Maryland Heights, Missouri. Id. ¶¶ 35–42.

The Complaint alleges that on September 6, 2023, Mr. Khadikov and his family appeared for a visa interview at the United States Embassy in Yerevan, Armenia, as part of Mr. Khadikov's nonimmigrant visa application. Id. ¶ 44. The consular officer briefly considered Mr. Khadikov's application, asking three questions, and after five minutes stated Mr. Khadikov's application required additional processing. Id. ¶ 48. Mr. Khadikov received an email after the interview requesting additional information, and, according to the Complaint, Mr. Khadikov provided the

---

[2] The Court additionally considered the declaration attached to the Complaint. See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider documents attached to or submitted with the complaint in evaluating a motion to dismiss).

information on September 21, 2023.  Id. ¶¶ 49–50.  The Embassy advised Mr. Khadikov that he would receive an email when the "administrative processing" was complete.  Id. ¶ 51.

On January 23, 2024, Bimbo sent a letter requesting that the Embassy finish processing Mr. Khadikov's visa application so that he could begin working in the United States.  Id. ¶ 52.  Plaintiffs only received a response on October 1, 2024, which indicated that Mr. Khadikov's "administrative processing" was still ongoing.  Id. ¶ 53.  Despite allegedly requesting repeated updates from the Embassy, Mr. Khadikov's visa application continues to be pending.  Id. ¶¶ 53–56.

## II. PROCEDURAL HISTORY

Plaintiffs filed the instant Complaint on November 5, 2024, asserting two claims against Secretary Rubio:  (Count I) failure to follow agency priorities, regulations, and rules, in violation of the APA, 5 U.S.C. §§ 555(b), 706(1), and (Count II) unreasonable delay in processing a blanket nonimmigrant L visa, in violation of the APA, 5 U.S.C. §§ 555(b), 706(1).  ECF 1.  On February 5, 2025, Defendant moved to dismiss both counts of the Complaint for lack of subject matter jurisdiction and for failure to state a claim.  ECF 12.  Plaintiffs responded on February 19, 2025.  ECF 13.  Defendant filed a reply on February 26, 2025.  ECF 14.

## III. LEGAL STANDARD

### A. Rule 12(b)(1) – Subject Matter Jurisdiction

A court "must grant" a Rule 12(b)(1) "motion to dismiss if it lacks subject-matter jurisdiction to hear the claim."  In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012).  A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may present either a facial or a factual attack.  Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  A facial attack concerns "'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the

3

jurisdictional prerequisites.'" CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008) (quoting United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007) (alterations in original)).

In this case, Defendant's challenge is factual because the Motion challenges whether this Court has actual jurisdiction to hear the case based on mootness doctrine. See CNA, 535 F.3d at 139. When considering a factual challenge, "'the plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself of its power to hear the case.'" Davis, 824 F.3d at 346 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). Further, "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortenson, 549 F.2d at 891.

### B. Rule 12(b)(6) – Failure to State a Claim

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Twombly, 550 U.S. at 555), and so it will not suffice if it is "devoid of further factual enhancement," Iqbal, 556 U.S. at 678 (citation omitted). Thus, in considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, Doe v. University of Sciences, 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that it has not alleged[,]" Twombly, 550 U.S.

4

at 563 n.8 (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

IV. **PARTIES' CONTENTIONS**

The Government makes five arguments in support of dismissal:

1. Plaintiffs have no standing to sue Secretary Rubio because he cannot redress the alleged injury.

2. Plaintiffs' claims for unreasonable delay and failure to follow agency rules are moot, and therefore the Court lacks subject matter jurisdiction, because the Embassy discharged its nondiscretionary duty when it refused to issue Mr. Khadikov's visa after the September 6, 2023 interview, and thus he received the relief he seeks.

3. Plaintiffs fail to state a claim because the Government has no duty to reconsider the denial of a visa application.

4. The doctrine of consular nonreviewability precludes judicial review of the consular officer's decision to refuse Mr. Khadikov a visa.

5. Plaintiffs cannot show as a matter of law that there is an unreasonable delay under the Third Circuit's factors articulated in Oil, Chemical & Atomic Workers Union v. OSHA, 145 F.3d 120, 123 (3d Cir. 1998).

See generally ECF 12.

Plaintiffs make three arguments in response. First, Plaintiffs counter that the claims are not moot because the pertinent regulations provide "discreet, mandatory duties to accept applications, review evidence, and complete processing," ECF 13 at 16, and the Embassy did not discharge its nondiscretionary duty by placing the application in "administrative processing" without adjudicating the visa application, id. at 15–19. Second, Plaintiffs argue the doctrine of consular nonreviewability does not apply where a decision on the visa application has not been made. Id. at 19–23. Third, Plaintiffs argue that the Complaint sufficiently states a claim on both alleged counts because, as to Count I for failure to follow agency rules and regulations, Defendant has not complied with his mandatory duty per the regulations to review the additional evidence

Mr. Khadikov submitted, and as to Count II for unreasonable delay, the Complaint alleges that the delays of administrative processing are unreasonable. Id. at 23–26.

V. ANALYSIS

The Government asserts that both counts of the Complaint must be dismissed for lack of subject matter jurisdiction. ECF 12 at 11–14. Because the Court's jurisdiction is a threshold issue that must be resolved, the Court will address each of the Government's subject matter jurisdiction challenges.

A. Subject Matter Jurisdiction

1. Secretary Rubio is a Proper Defendant

The Government first contends that the Plaintiffs lack standing to sue Secretary Rubio because Secretary Rubio cannot redress the alleged injury. The Government cites 8 U.S.C. § 1104(a), which provides that the Secretary of State's powers to enforce immigration laws are curtailed by statute to exclude those powers "conferred upon the consular officers relating to the granting or refusal of visas." ECF 12 at 1–2. The Court rejects the Government's argument.

For starters, the Third Circuit has cautioned against determining whether a plaintiff has sued the proper defendant as a matter of standing, holding instead that "the question of whether a plaintiff has sued the correct defendant should ordinarily be addressed at the pleading stage by affording the plaintiff the protections provided by Rule 12(b)(6)." Davis, 824 F.3d at 347–49 ("[S]tanding is generally an inquiry about the plaintiff: is this the right person to bring this claim."). Further, Plaintiffs are not asking for the Secretary to make a substantive decision on Mr. Khadikov's visa application, rather they are asking the Secretary to ensure the visa application gets processed. Janay v. Blinken, 743 F. Supp. 3d 96, 105 (D.D.C. 2024) ("No one doubts that the decision to grant or deny a visa application is left exclusively to consular officers….The question here, however, is whether the Secretary could, if ordered by the Court, ensure that the relevant

6

consular officer renders a final decision on [plaintiff's] visa application—up or down—within a reasonable period of time.").

### 2. Consular Nonreviewability Does Not Bar Review

The Government next argues that the doctrine of consular nonreviewability—which places a consular official's decision to issue or refuse a visa outside the scope of judicial review—is arguably a jurisdictional question and precludes Plaintiffs' claims. ECF 12 at 18–22. According to the Government, the Embassy rendered a decision on Mr. Khadikov's visa application when it refused to issue Mr. Khadikov a visa, and Plaintiffs are disguising a challenge to the consular officer's substantive decision as a claim for unreasonable delay and failure to adjudicate the application.

The Court finds that the doctrine of consular nonreviewability is no bar here because, after a careful reading of the Complaint, Plaintiffs are challenging the Embassy's inaction and failure to render a decision on Mr. Khadikov's visa application that has been placed into "administrative processing."[3] It is well established that the Court has jurisdiction "when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion[.]" Patel v. Reno, 134 F.3d 929, 931–32 (9th Cir. 1997). Because the Embassy has a nondiscretionary duty to issue or refuse to issue a visa, see infra, consular nonreviewability does not bar a challenge to the agency's delay in discharging its mandatory duty. See Ahmed v. Holder, 12 F. Supp. 3d 747, 754 (E.D. Pa. 2014) (Brody, J.) ("Although the ultimate decision whether to grant adjustment of status is entrusted to the discretion of the [Embassy], 'numerous courts have found that immigration authorities have a non-discretionary duty to adjudicate

---

[3] At this stage of the case, the Court construes the Complaint's allegations liberally.

7

applications.'" (quoting Hoo Loo v. Ridge, No. 04-cv-5553, 2007 WL 813000, at *3 (E.D.N.Y. Mar. 14, 2007)); APA, 5 U.S.C. § 706(1).

### 3. Plaintiffs Lack Standing For Their APA Claims

The Government argues that Plaintiffs' claims are moot, and thus the Court does not have subject matter jurisdiction, because Plaintiffs already have received a decision – the consular officer adjudicated Mr. Khadikov's visa application and refused to issue the visa on the day of his visa interview. ECF 12 at 11–14.

The APA allows a "reviewing court [to] compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1); 5 U.S.C. § 555(b) (requiring an agency to "proceed to conclude a matter presented to it" "within a reasonable time"). A court's ability to compel agency action, however, is circumscribed; the agency must have a discrete, nondelegable duty to act. Norton v. S. Utah Wilderness All., 542 U.S. 55, 63–65 (2004); Massie v. United States Dep't of Housing and Urban Development, 620 F.3d 340, 347 (3d Cir. 2010).

The State Department by regulation has a discrete, nondelegable duty—upon execution of a visa application—to either: (i) issue the visa, (ii) refuse the visa application under 8 U.S.C. § 1182(a), 8 U.S.C. § 1201(g), or other applicable law, or (c) discontinue granting the visa under INA section 243(d)." 22 C.F.R. § 41.121(a). Section 221(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1201(g), provides that "[n]o visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa…[or] (2) the application fails to comply with the provisions of this Act, or the regulations issued thereunder[.]" When a consular officer refuses the issuance of a visa, the consular officer must inform the applicant of the ground of ineligibility and whether there is a mechanism to overcome the refusal. 22 C.F.R. § 41.121(b).

8

According to the Government, the only nondiscretionary duty imposed by the relevant regulations cited above is to issue or refuse a visa, and the Embassy discharged this duty when it declined to issue Mr. Khadikov a visa after his interview. The Government argues that it is not required to re-adjudicate Mr. Khadikov's visa application after it "refuse[d] the visa application," 22 C.F.R. § 41.121(a), and that the Embassy's decision to request additional information from Mr. Khadikov and to place Mr. Khadikov's visa application in "administrative processing" was a discretionary decision. Plaintiff responds that the consular officer did not "refuse" the visa at the interview, and that the Embassy does not discharge its nondelegable duty of adjudicating a visa application until it makes a final decision, after "administrative processing," on whether to issue or refuse the visa application.

The Court will address two questions raised by the parties' arguments: (1) did the consular officer refuse Mr. Khadikov's visa at the time of the interview on September 6, 2023, and (2) did that refusal discharge the Government's nondelegable duty of adjudicating the visa application, even though the Embassy referred Mr. Khadikov's application for further "administrative processing" and requested additional information?

### a. The Consular Officer Refused to Issue a Visa

In determining whether the consular officer at the Embassy in Yerevan refused Mr. Khadikov's visa, the Court will first look to the Complaint. The Complaint alleges that at the visa interview, the "visa officer briefly considered Mr. Khadikov's resume and stated his application required additional processing." Compl. ¶ 48. It then alleges that Mr. Khadikov received an email requesting additional information, which he provided, and that his application has remained in "administrative processing" limbo since that time. Id. ¶¶ 49–56. There are no allegations in the Complaint that the visa application was "refused" at the interview.

9

The Government, however, offers two key pieces of additional evidence to support its Rule 12(b)(1) Motion.[4] First, the Government attaches the Declaration of Claire Kelly (ECF 12-1), an Attorney-Adviser in the Office of the Assistant Legal Adviser for Consular Affairs. ECF 12-1 at ¶ 1. Ms. Kelly attests that the Consular Consolidated Database reflects that on September 6, 2023, the day of Mr. Khadikov's visa interview, "the consular officer refused Mr. Khadikov's visa application under Immigration and Nationality Act (INA) section 221(g), 8 U.S.C. § 1201(g)." Id. at ¶ 4. Second, the Government attaches an email from the Embassy to Mr. Khadikov dated December 12, 2024, after this litigation commenced, which clarifies that the consular officer at the interview had "determined you have not established that you are eligible for a visa and denied your visa application on 06 SEP 2023 under INA 221(g)."[5] ECF 12-2.

The Court therefore concludes that Mr. Khadikov's visa was refused at his interview.

### b. The Refusal at the Visa Interview Discharged Any Nondiscretionary Duty

The next issue is whether the Embassy's refusal to issue Mr. Khadikov a visa at his interview discharged the Embassy's non-discretionary duty to adjudicate his visa application. If so, then the Court is without subject matter jurisdiction because Plaintiffs would lack standing, as the Court can only compel an agency to complete a non-discretionary duty.[6]

---

[4] As discussed above, while the Court typically is confined to the Complaint's allegations, on a Rule 12(b)(1) motion that attacks the factual allegations underlying the Complaint's assertion of jurisdiction, the Court may "weigh the evidence" and "the plaintiff [has] the burden of proof that jurisdiction does in fact exist[.]" Davis, 824 F.3d at 346. Here, because the Government levies a factual challenge to the Court's jurisdiction, the Court can consider the Government's evidence.

[5] Plaintiffs' rebuttal exhibits are unavailing. Plaintiffs' exhibits merely reflect that Mr. Khadikov's visa application is pending administrative checks; there is no indication that the visa application has not already been refused.

[6] Although the Government stakes its defense on mootness doctrine, standing is a more appropriate inquiry here because the Embassy's refusal to issue Mr. Khadikov a visa occurred prior to commencement of litigation. W. Virginia v. EPA, 597 U.S. 697, 718–19 (2022) ("[S]tanding concern[s] whether a plaintiff has satisfied the requirement when filing suit[.]…[M]ootness, not standing, [ ] addresses whether 'an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit'" (quoting Genesis HealthCare Corp. v. Symczyk, 569 U.S. 66, 72 (2013)). Under either doctrine, as explained below, the Court lacks subject matter jurisdiction.

A plaintiff must have standing to sue in order for the Court to exercise subject matter jurisdiction, which requires that the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). For Plaintiffs' alleged injury to be redressable, the Court must have the power to grant the relief requested. The Court, however, "cannot constitutionally order USCIS to do that which it has already done[.]" Ekwunife v. USCIS, No. 23-cv-1720, 2023 WL 8651406, at *3 (E.D. Pa. Dec. 14, 2023) (Pratter, J.).

This Court finds that there is no mandatory, nondiscretionary duty to "reconsider" Mr. Khadikov's refused visa application that is in "administrative processing," and thus the Court cannot compel the Embassy to do so. The Court first turns to the text of the regulations. As examined above, the nondiscretionary duty imposed by regulation is the duty to either "issue the visa" or "refuse the visa application." 22 C.F.R. § 41.121(a). While "the consular officer *may* require the submission of additional necessary information…whenever the consular officer believes the information provided in the application is inadequate," that does not entitle the visa applicant to a definite re-consideration of a refused visa application. 22 C.F.R. § 41.103(b)(2) (emphasis added). The consular officer here refused to issue the visa pursuant to Section 221(g) of the Immigration and Nationality Act (8 U.S.C. § 1201(g)), Kelly Decl. (ECF 12-1), and informed Mr. Khadikov of "a mechanism [ ] to overcome the refusal" through "administrative processing." 22 C.F.R. § 41.121(b)(1).

Plaintiffs present a novel argument that the structure of certain regulations indicates that the duty to adjudicate visa applications extends through "administrative processing." First, according to Plaintiffs, 22 C.F.R. § 41.121(c) provides a mandatory, nondiscretionary duty for the

11

Embassy to review a visa refusal within 120 days, which the Embassy has allegedly breached. 22 C.F.R. § 41.121(c). Further, according to Plaintiffs, 22 C.F.R. § 41.103(b)(2) states that the consular officer "may require the submission of additional necessary information," that "[a]ll documents required by the consular officer under the authority of § 41.105(a) are considered papers submitted with the alien's application" and, under 22 C.F.R. § 41.105(a)(1), "[a]ll documents and other evidence presented by the alien, including briefs submitted by attorneys or other representatives, <u>shall</u> be considered by the consular officer." <u>Id.</u> (emphasis added). Plaintiffs argue that based on these regulations, once a consular officer requests supplemental information from a visa applicant, there is a mandatory duty to consider the evidence requested within 120 days. ECF 13 at 16.

However, these regulations do not support Plaintiffs' theory that the Embassy must re-adjudicate each visa refusal. 22 C.F.R. § 41.121(c) merely requires that "[n]onimmigrant refusals must be reviewed [by supervisors], in accordance with guidance by the Secretary of State," "to ensure compliance with laws and procedures." But there is no nondiscretionary duty clear from the text providing a discreet requirement for the agency to *re-adjudicate* each refusal. <u>See</u> <u>Yaghoubnezhad v. Stufft</u>, 734 F. Supp. 3d 87, 101 (D.D.C. 2024) (holding that 22 C.F.R. § 41.121(c) does not provide refused applicants with a right to re-adjudication). And 22 C.F.R. § 41.105 requires a consular officer to consider certain documents submitted with a visa application but provides no nondiscretionary duty for the Embassy to re-adjudicate a visa application once it has already been refused. <u>Cf.</u> <u>Pak v. Biden</u>, 91 F.4th 896, 902 (7th Cir. 2024) (citing 22 C.F.R. § 41.105(a) and commenting that "once a visa denial has been issued, no statute or regulation obligates consular officers to re-open an application just because new evidence has been presented").

12

District courts confronting similar factual predicates are split on whether such a refusal to issue a visa and subsequent "administrative processing" deprives a court of subject matter jurisdiction to compel agency action under the APA, and both parties cite ample authority to support their contentions. Plaintiffs, however, rely heavily on out-of-circuit, non-binding authority, and attach to their response brief an unpublished Order from a Magistrate Judge in the Central District of California. See ECF 13-4. The Court takes note that courts within the Third Circuit as well as the only appellate decision cited by the parties for these issues, albeit non-binding authority, have found that when a consular officer refuses to issue a visa, even if there is additional "administrative processing," that discharges the Embassy's nondelegable duty.

The most factually similar case in this Circuit is Elhabash v. United States Department of State, No. 09-cv-5847, 2010 WL 1742116 (D.N.J. Apr. 27, 2010). In Elhabash, as here, the plaintiff allegedly interviewed with a consular officer who informed him at the interview that the visa application required further administrative processing. Id. at *1. The parties disputed whether the consular officer informed the plaintiff at the interview that his visa application was rejected. Id. The Government submitted an affidavit averring that the plaintiff's application was refused by the Embassy pursuant to § 221(g) of the INA because it required further administrative processing, and after the litigation commenced, the Government also sent a letter informing the plaintiff that the application was refused. Id. And, practically mirroring the alleged facts in the instant Complaint, the plaintiff received responses from the Embassy to his update requests that his case was "undergoing administrative processing." Id. at *2. The court in Elhabash, after weighing the evidence, held there was no jurisdiction because the Embassy had already rendered a decision on the plaintiff's visa application.[7]

---

[7] In addition to Elhabash, the parties cited three other district court opinions within the Third Circuit addressing a similar question, two of which dismiss the complaints for lack of subject matter jurisdiction. See Denisova v.

Additionally, the DC Circuit in an unpublished opinion, cited by the Government, similarly held that there is no subject matter jurisdiction when a visa is refused, even if the visa application is referred for "administrative processing." Karimova v. Abate, No. 23-cv-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam) ("After a consular officer makes an official decision refusing to issue a visa because the applicant has not carried her burden of showing eligibility, the official may then conclude that the applicant could perhaps still receive a visa eventually if circumstances change.  As a result, the consular officer may choose to place an officially refused application in administrative processing.  Such an applicant cannot come into the United States since the consular officer has refused to issue her a visa."); see also Hussein v. Beecroft, 782 F. App'x 437, 441–42 (6th Cir. 2019) (non-precedential).

Accordingly, the Court lacks subject matter jurisdiction to hear this case, and both counts of the Complaint must be dismissed.[8]

## VI.   CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss is **GRANTED**.  The Complaint is **DISMISSED with prejudice**.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-5919 Bimbo Bakeries v Blinken\24cv5919 Memo re MTD.docx

---

Mayorkas, No. 23-cv-1902, 2024 WL 2043664 (W.D. Pa. May 8, 2024); see also Meleo v. Blinken, No. 23-cv-03495, 2024 WL 4345289 (D.N.J. Sept. 30, 2024).  The court in Assad v. Holder, No. 13-cv-117, 2013 WL 5935631 (D.N.J. Nov. 1, 2013) found that there was subject matter jurisdiction because the embassy failed to execute its nondiscretionary duty to issue a visa or a **final** refusal.  Plaintiffs urge the Court to follow Assad's holding, but Assad is distinguishable because first, the court was analyzing 22 C.F.R. § 42.81's (for immigrant visas) refusal procedures which are inapplicable here.  The instant case falls under 22 C.F.R. § 42.121's refusal procedures (for nonimmigrant visas).  Second, in Assad, the Embassy explicitly stated in its letter to the plaintiff after the plaintiff's interview that the visa decision was temporary and still pending.

[8] Because the Court's conclusion as to subject matter jurisdiction disposes of the issues, the Court need not address the Government's remaining argument that the Complaint's allegation of a now 18-month delay is legally insufficient to state a claim for unreasonable delay.